UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROGELIO GALVAN, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 4 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| COMMUNITY UNIT SCHOOL DISTRICT NO. # 300, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Rogelio Galvan filed this suit against his employer, Community Unit School District No. # 300, alleging national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Doc 1. The District has moved under Federal Rule of Civil Procedure 56 for summary judgment. Doc. 46. Because the summary judgment record shows as a matter of law that Galvan did not suffer a materially adverse employment action, the motion is granted.

**Background**

The facts are set forth as favorably to Galvan as the record and Local Rule 56.1 allow. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). Galvan came to the United States from Mexico in 1983, and his primary language in Spanish. Doc. 64 at ¶ 1. He has worked since 2000 as a second-shift custodian at Jacobs High School, which is part of the District. Doc. 55 at ¶¶ 2, 4. Galvan's shift runs from 3:00 p.m. to 11:30 p.m., and he completes janitorial work within an assigned area at Jacobs. *Id*. at ¶ 4. Galvan knows very little English, but this does not interfere with his ability to perform his job. *Id*. at ¶¶ 5-7, 13; Doc. 64 at ¶¶ 1-2.

1

Ray Veilleux was the Building Manager at Jacobs and Galvan's supervisor from July 2009 to September 2011. Doc. 55 at ¶ 9; Doc. 64 at ¶ 4. During that time, Veilleux told Galvan to "speak English" as much as "two or three times a day" and "sometimes once a week." Doc. 55 at ¶ 12; *see also id*. at ¶¶ 21-23, 25 (setting forth specific instances). Galvan "didn't take those comments to heart" because they "didn't bother [him] too much." *Id*. at ¶ 12 (original alterations omitted). Moreover, Galvan admits that Veilleux "did not interfere with his ability to perform the essential functions of his job," which he did "perfectly." *Id*. at ¶ 13. In one instance, however, Galvan was embarrassed when Veilleux told him not to speak Spanish when talking with his nephew, also a custodian for the District. Doc. 64 at ¶ 9. In another instance, Veilleux mistreated Galvan in front of other custodians by pointing at him and scolding him. *Id*. at ¶ 6. Additionally, two coworkers harassed Galvan about his speaking in Spanish in the custodian room. *Id*. at ¶ 11. And Veilleux would get angry at Galvan when he needed an interpreter, telling him to speak English. *Id*. at ¶ 17.

Galvan believes that Velliux's treatment of him was motivated by a desire to eliminate Hispanic and older employees. *Id*. at ¶¶ 5, 7, 10. That said, Galvan concedes that he had no evidence to support his belief; moreover, Veilleux never disciplined Galvan for any reason, including his difficulties with the English language or for speaking Spanish, and Veilleux never counseled Galvan for performance-related reasons or made any negative comments to him about his work performance. Doc. 55 at ¶¶ 15, 19.

In April 2011, Galvan volunteered for an overtime opportunity to work as the sole custodian at a basketball tournament held by an outside party in the Jacobs gymnasium. Doc. 55 at ¶¶ 28-29. Days before the event, Veilleux warned Galvan not to request translation assistance from another custodian if he could not understand requests for urgent tasks from the outside

party. *Id*. at ¶¶ 29-32, 35. Veilleux told Galvan that if he received complaints from the outside party about Galvan's inability to communicate in English, Galvan would no longer receive overtime or "comp time" opportunities that would require him to work alone, although he would remain eligible for jobs when bilingual colleagues would be present. *Id*. at ¶ 36; Doc. 64 at ¶ 8. It was during this conversation that Veilleux pointed at and scolded Galvan. Doc. 55 at ¶ 39; Doc. 64 at ¶ 6. Galvan worked the event without a problem, Veilleux did not receive any complaints, and Veilleux never again warned Galvan about seeking translation help from his colleagues. Doc. 55 at ¶¶ 40-41.

At some point, Veilleux assigned Galvan the responsibility for cleaning several rooms that had been in the area to which Jim Ranallo, another District custodian, was assigned. Doc. 64 at ¶ 12. Galvan believes that Veilleux assigned him additional rooms so that he would "fail" to perform his own job assignments, although it turns out that Galvan was able to complete all of the work and suffered no repercussions. Doc. 55 at ¶¶ 15, 45; Doc. 64 at ¶ 12. Additionally, Veilleux assigned Galvan more work than three non-Hispanic colleagues and gave those colleagues more overtime. Doc. 64 at ¶¶ 13-14. The colleagues were Ranallo, who was about "about" fifty years old; Jim Gromer, who was between thirty-five and forty years old; and Jason Arrington, who was about thirty years old. *Id*. at ¶ 13.

The District maintains policies, including an Equal Opportunity Policy, that prohibit discrimination and harassment. Doc. 55 at ¶¶ 53-54. District employees are instructed to report claims of discrimination or harassment to the Nondiscrimination Coordinator or to use the Uniform Grievance Procedure. *Id*. at ¶ 55. On or about May 5, 2011, a union official notified Jacobs's principal, Shelly Nacke, that Galvan complained that Veilleux had told him to speak English; in response, Nacke assigned Rick Johnson, an associate principal with supervisory

authority over Veilleux, to investigate. *Id*. at ¶ 56. At a meeting that day, Veilleux told Johnson that Galvan's difficulties with English hindered Galvan's ability to understand instructions and occupied the time of other custodians called upon to translate for him. *Id*. at ¶ 57. Johnson told Veilleux that the custodian job description did not require custodians to speak English, that Galvan's lack of mastery of the English language did not render him disqualified for the custodian position, and that Galvan should be allowed to find bilingual custodians to translate for him when necessary. *Id*. at ¶ 59. Veilleux told Johnson that he understood and that he would comply with Johnson's directives. *Id*. at ¶ 60. At no time after Johnson's meeting with Veilleux and before Veilleux's resignation did Galvan lodge any new complaints against Veilleux with Johnson or with any other Jacobs official. *Id*. at ¶ 61.

In July 2011, the new principal of Jacobs, Ami Engel, met with Veilleux to convey her expectations regarding the matters raised in Galvan's May 2011 complaint. *Id*. at ¶ 62. Specifically, Engel explained to Veilleux that Jacobs services all members of the community, including those who do not speak English well or at all. Id. at ¶ 63. Engel instructed Veilleux that he could not tell Galvan or any other employee that they must learn and/or speak English, and she in fact suggested that Veilleux learn some Spanish to help him communicate with staff members. *Ibid*. Veilleux ultimately resigned his employment at Jacobs on September 16, 2011. *Id*. at ¶ 63.

On October 3, 2011, Galvan attended a meeting with Engel, a human resources representative who served as Galvan's translator that day, another Jacobs custodian, and the union official who had conveyed Galvan's complaint to Nacke in May 2011. *Id*. at ¶ 64. The purpose of the meeting was to address a complaint that Galvan had made against the other custodian as well as a new complaint that Galvan had made against Veilleux on September 30,

2011, two weeks after Veilleux's resignation on September 16. *Ibid*. Specifically, Galvan complained that on September 16, Veilleux came upon Galvan watching a Spanish-speaking television program and said, "No Spanish, only English." *Id*. at ¶ 65. Because Veilleux had resigned on September 16, Engel asked Galvan whether anybody else had told him that he needed to speak English, and Galvan responded that nobody else had. *Id*. at ¶ 66. Engel told Galvan that if anybody else told him that he had to speak English, he should tell her or another Jacobs administrator or file a formal complaint under the District's uniform grievance procedure. *Ibid*. To date, Engel and other Jacobs administrators have received no new complaints from Galvan that anybody has told him that he must speak English while at work. *Ibid*.

## Discussion

A plaintiff alleging discrimination under Title VII and the ADEA may defeat summary judgment under the direct method or the indirect method. *See Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). "Whether the plaintiff proceeds by the direct or indirect method of proof, he must show a materially adverse employment action." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *see also Andrews*, 743 F.3d at 234-35 (same); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 779 (7th Cir. 2010) (same). "A materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job responsibilities. While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Nichols*, 510 F.3d at 780 (citations and internal quotation marks

5

omitted). The Seventh Circuit has classified materially adverse employment actions into three general categories:

> (1) cases in which the employee's compensation, benefits or other financial terms of employment are diminished, including cases where employment is terminated; (2) cases in which a nominally lateral transfer without a change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced; and (3) [c]ases in which the employee is not moved to a different job or the skill requirements of his present job altered, but the conditions in which he works are changed in a way that subjects him to humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment.

*Tart v. Ill. Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004) (alteration in original) (internal quotation marks omitted); *see also Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012) (same); *Nichols*, 510 F.3d at 780 (same).

The District's opening brief argues that the undisputed facts would not permit Galvan to show that he suffered a materially adverse employment action. Doc. 47 at 8-19. Specifically, the District contends that Galvan was not demoted, suspended, disciplined, terminated, or subject to a loss of pay; that Veilleux's conduct did not interfere with Galvan's job duties; and that Veilleux's assigning Galvan additional rooms to clean, Veilleux's telling Galvan to speak English, Galvan's failure to obtain discretionary overtime, Galvan's alleged depression, and Veilleux's telling Galvan not to ask his colleagues for translation assistance were not materially adverse employment actions. *Ibid*. Galvan's response brief cites some of the general legal principles set forth above, but makes little to no effort to apply the law to the facts. Doc. 57 at 7-11. Nonetheless, the court will address the supposed materially adverse employment actions

identified in Galvan's brief—none of which, it bears mention, involve any demotion, suspension, discipline, termination, or loss of pay (other than overtime).[*]

First, Galvan states that Veilleux "assigned [him] an additional five rooms of work from" the area of a non-Hispanic and younger employee (Ranello), and also that he was assigned more work than three non-Hispanic and younger employees (Ranello, Gromer, and Arrington). Doc. 57 at 8. Under settled precedent, however, additional work within the plaintiff's job description is not a materially adverse employment action. *See Lapka v. Certoff*, 517 F.3d 974, 986 (7th Cir. 2008) (holding that the defendant's assignment to the plaintiff of all the office's mandamus cases, which are more difficult than other assignments, was not an adverse employment action because the plaintiff "already handled mandamus cases" and "the fact that she received more of them did not significantly alter her job responsibilities"); *Griffin v. Potter*, 356 F.3d 824, 826, 829 (7th Cir. 2004) (holding that assigning the plaintiff "the office's more difficult EEO

---

[*] In his Local Rule 56.1(b)(3)(B) response, Galvan cites a portion of his deposition transcript in which the examining attorney quoted an April 2012 letter from Galvan to union officials, which stated: "Every year during the time of school breaks in winter, spring and summer, I've been instructed to move in a different work shift without my consent. I did not get the 25 cent raise that was agreed in union contract when involuntarily transferring of shifts. This situation has been going on for too many years now until today. According to my understanding of the Despa [union] contract, this policy has been broken. I will appreciate if you answer to my request in writing." Doc. 55 at ¶ 14. Nowhere in his summary judgment papers does Galvan expressly maintain that the alleged denial of the 25 cent raise resulted from national origin or age discrimination; moreover, Galvan does not identify who was responsible for denying the raise, which is important because Veilleux is the only person in a position of authority alleged to have harbored class-based animus against him. *See Metzger v. Ill. State Police*, 519 F.3d 677, 682 (7th Cir. 2008) ("to prevail under the direct method a plaintiff must provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason.") (internal quotation marks omitted). In any event, to the extent Galvan submits his own letter (or the deposing attorney's reading of the letter) as evidence that he was denied a raise, the letter is hearsay, *see* Fed. R. Evid. 801; *Friends of Milwaukee's Rivers & Alliance for Great Lakes v. Milwaukee Metro. Sewerage Dist.*, 556 F.3d 603, 615-16 (7th Cir. 2009); *Rush Univ. Med. Ctr. v. Leavitt*, 535 F.3d 735, 742 (7th Cir. 2008), and Galvan does not offer an exception under which the letter could be admitted. And because the letter is inadmissible hearsay, Galvan may not use it to oppose summary judgment. *See Johnson v. Holder*, 700 F.3d 979, 982 (7th Cir. 2012); *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 733 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

investigations" was not an adverse employment action); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2003) (holding that "even if [the plaintiff] had direct evidence of a heavier workload, harder work assignments do not constitute an adverse employment action"); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 686-87, 692 (7th Cir. 2001) (holding that the plaintiff, a female custodian, did not suffer an adverse employment action where she was required to clean restrooms, to shovel snow, and to perform a variety of maintenance tasks usually reserved for outside contractors). It is undisputed that cleaning rooms was within Galvan's job description.

Second, Galvan asserts three non-Hispanic and younger employees "received more favorable treatment in overtime." Doc. 57 at 8. Lost overtime is a materially adverse employment action only if the plaintiff shows that the overtime was a "significant and recurring part of an employee's total earnings similar to a raise," but not if the overtime opportunities were "sporadic, irregular, unpredictable, and wholly discretionary on the part of the employer" and thus akin to a "discretionary bonus." *Lewis v. City of Chicago*, 496 F.3d 645, 653-54 (7th Cir. 2007) (internal quotation marks omitted); *see also Henry v. Milwaukee Cnty.*, 539 F.3d 573, 585-86 (7th Cir. 2008) (holding that the lost overtime in that case was a materially adverse employment action because "[i]t is undisputed that overtime pay had been a significant and expected component of the plaintiffs' compensation prior to the institution of the sex-based policy").

The District argues that the overtime was discretionary, and therefore that the denial of overtime was not a materially adverse employment action. Doc. 47 at 16. Galvan does not respond to that argument or contend (let alone show) that overtime was a significant and recurring part of his total earnings. Galvan has accordingly forfeited any claim based on the denial of overtime. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[w]e apply

[the forfeiture] rule where a party fails to develop arguments related to a discrete issue"); *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (where the party "cited no relevant legal authority to the district court to support the proposition … the argument is waived"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (internal quotation marks omitted); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to Cracker Barrel's motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). Although forfeiture disposes of the overtime issue, it bears mention that Galvan admits that after the April 2011 overtime opportunity at the basketball tournament, he "continued to volunteer for and be assigned similar overtime opportunities, even when there was not a bilingual custodian working the event." Doc. 55 at ¶ 40.

Third, Galvan's brief argues that Veilleux's mistreatment of him—the scolding, the embarrassment, the harsh words, the direction to speak English rather than Spanish—constituted a hostile work environment. Doc. 57 at 10-11. A hostile work environment fits within the third general category of adverse employment actions identified by the Seventh Circuit. *See Herrnreiter v. Chi. Housing Auth.*, 315 F.3d 742, 745 (7th Cir. 2002) (holding that the third category includes "cases of harassment-mistreatment of an employee by coworkers or

supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998)). The District argues that the undisputed facts would not permit Galvan to show that he suffered a hostile work environment. Doc. 47 at 22-33. "To avoid summary judgment on a hostile work environment claim, a plaintiff must provide sufficient evidence to create a genuine issue of material fact as to four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) [his age] or national origin must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014); *see also Fugate v. Dolgencorp, LLC*, __ F. App'x __, 2014 WL 321902, at *2 n.1 (7th Cir. Jan. 30, 2014) ("We have assumed without deciding that plaintiffs may bring a claim of a hostile work environment under the ADEA.") (citing *Racicot v. WalMart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001)). In seeking summary judgment, the District contends that Galvan did not perceive his work environment to be subjectively hostile; that the alleged harassment was not severe or pervasive; that the alleged harassment was not based on Galvan's Mexican or Hispanic ancestry or on his age; and that there is no basis for employer liability because the District exercised reasonable care to prevent and correct any harassing behavior and Galvan unreasonably failed to take advantage of the preventive or corrective opportunities that the District provided. Doc. 47 at 22-33.

Galvan's opposition brief does not expressly acknowledge the elements of the hostile work environment claim, let alone apply those elements to the facts of this case. Doc. 57 at 8-11. The sum and substance of his argument reads as follows: "It is submitted, that based on the facts

presented here, there is more than enough evidence for a reasonable fact finder to conclude harassment or a hostile environment occurred and the terms and conditions of Plaintiff's employment have been affected by the actions of his supervisors. The Defendant discounts the actions of the supervisor as non-relevant and also condones the environment that Plaintiff was subjected to." *Id*. at 11. At most, and even this is overly generous, other passages in Galvan's brief can be read to implicitly argue the first three elements of a hostile work environment claim: that he perceived his workplace to be subjectively hostile, that the harassment was severe or pervasive, and that the harassment was based on his national origin or age.

But nowhere does Galvan's brief even remotely address the final element of a hostile work environment claim, whether there is a basis for employer liability. On this element, the District's opening brief concedes that Veilleux was Galvan's supervisor; cites *Vance v. Ball State University*, 133 S. Ct. 2434, 2439 (2013), for the governing standard, which is: "If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided"; and applies that standard to the facts of this case. Doc. 47 at 30-33. Specifically, the District correctly contends that Veilleux's alleged harassment did not culminate in a tangible employment action, so the District is not strictly liable, and then proceeds with a well-developed and amply-supported argument that because the District appropriately responded to the single complaint that Galvan lodged about Veilleux during Veilleux's tenure, and because Galvan made no other complaints during Veilleux's tenure about Veilleux's allegedly frequent abusive behavior, the

District cannot be held liable for Veilleux's conduct. *Id*. at 31-33 (citing the record materials summarized in the last three paragraphs of the Background section above). The District is right on the merits. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 812-13 (7th Cir. 2001) (rejecting employer liability under circumstances comparable to those here); *Saxton v. AT&T Co.*, 10 F.3d 526, 535-36 (7th Cir. 1993) (same). In any event, by utterly failing to address the governing standard or to respond to the District's submission, Galvan has forfeited any argument for employer liability, and thus has forfeited the hostile work environment theory of his Title VII and ADEA claims. *See Alioto*, 651 F.3d at 721; *Arlin-Golf*, 631 F.3d at 822; *Bonte*, 624 F.3d at 466; *Judge*, 612 F.3d at 557; *Humphries*, 474 F.3d at 407; *Witte*, 434 F.3d at 1038.

## Conclusion

Veilleux's unprofessional behavior towards Galvan, assuming it occurred as Galvan describes it (as noted above, the court must resolve all factual disputes in Galvan's favor on summary judgment), is undoubtedly troubling. But because Galvan has failed to show in his summary judgment materials that he suffered a materially adverse employment action or, for purposes of the hostile work environment issue, that the District could be held liable for Veilleux's conduct, Galvan cannot prevail on his Title VII and ADEA claims. The District's summary judgment motion accordingly is granted.

June 4, 2014

_____
United States District Judge